UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Dennis Eugene Mentzos, Jr.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 04-173 ADM/RLE
Civil No. 08-1089 ADM

_____

Timothy C. Rank, Esq., Assistant United States Attorney, Minneapolis, MN, on behalf of Plaintiff.

Dennis Eugene Mentzos, Jr., *pro se*.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Defendant Dennis Eugene Mentzos, Jr.'s ("Defendant") 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence [Docket No. 250].[1]  For the reasons set forth herein, Defendant's § 2255 Motion is denied.

## II. BACKGROUND

On July 22, 2005, a jury convicted Defendant of sexual exploitation of a child, in violation of 18 U.S.C. §§ 2251(a) and (d); aiding and abetting mailing of child pornography, in violation of 18 U.S.C. §§ 2252(a)(1), 2252(b)(1) and (2); and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4) and 2252(b)(2).  Jury Verdict [Docket No. 203];

---

[1] All docket references are to Criminal No. 04-173 ADM/RLE.

Indictment [Docket No. 1].  This Court sentenced Defendant to 480 months.  J. [Docket No. 216].  On September 11, 2006, the Eighth Circuit affirmed the judgment.  United States v. Mentzos, 462 F.3d 830 (8th Cir. 2006).  On April 16, 2007, the United States Supreme Court denied Defendant's petition for writ of certiorari.  Mentzos v. United States, 127 S. Ct. 2079 (April 16, 2007).  Defendant timely filed his 28 U.S.C. § 2255 Petition by mailing it on April 13, 2008.[2]

The factual background of Defendant's conviction is set forth in the Eighth Circuit's opinion addressing Defendant's direct appeal.  In short, in 1995 Defendant was civilly committed to the Minnesota Sex Offender Treatment Program as a sexually dangerous person.  Defendant was housed at the Moose Lake Treatment Center ("MLTC").  The evidence at trial was that Defendant used a pay phone in the MLTC to communicate with M.S., a thirteen-year-old girl who identified herself as a sixteen-year-old Filipina on a telephone teen dating chat line.  Defendant, identifying himself as a seventeen-year-old Mexican high school senior from Minnesota named "Christian," instructed M.S. to ask for "Denny" if another person answered the phone when she called.  Christian sent M.S. letters and sexual material such as toys and movies.  Christian also mailed M.S. a Polaroid camera and induced her to take photos of herself naked and mail them to an address in Coon Rapids, Minnesota.  Other materials that M.S. received from Christian also bore this address.

---

[2] Under the prison mailbox rule, Defendant's § 2255 Petition is deemed filed as of the date he placed it in the prison mail system.  United States v. Harrison, 469 F.3d 1216, 1217 (8th Cir. 2006).

At trial, the Government produced abundant evidence that Defendant was "Christian." Defendant's mother resided at the Coon Rapids address that Christian provided to M.S. A packing slip listed Defendant as the purchaser of an adult product sent directly to M.S. from the manufacturer. Ron Starkey ("Officer Starkey"), a San Jose police officer, traced the phone number Christian provided to M.S. to a pay phone in the MLTC. Starkey asked Rick Harry ("Harry") the chief executive officer of the MLTC, if a person named "Denny" was in residence. Harry stated that Defendant was known as "Denny," and that Defendant used the identified pay phone. Harry informed Officer Starkey that MLTC staff found a photo of a juvenile "Asian or Filipino" in Defendant's room, and staff discovered naked images of the same girl, who was later identified as M.S., on a CD-ROM located in the room of another patient, Robert French ("French"). French claimed that Defendant gave him the CD. The thirteen images on the CD were labeled with the word "Dennis," followed by a number.

Moose Lake Chief of Police Dale Heaton ("Chief Heaton") interviewed Defendant following the discovery of the photos. Defendant denied conversing with M.S. and denied knowledge of the photos. However, after Chief Heaton referred to M.S. as Hispanic, Defendant stated "[s]he's Filipino, not Hispanic." July 20, 2005 Tr. [Docket No. 225] at 104. When Chief Heaton asked Defendant whom he was referring to, Defendant provided M.S.'s name. Id.

M.S. testified at trial that Defendant's voice sounded like "Christian's" voice. A handwriting expert testified that portions of the letters sent by "Christian Mendoza" matched Defendant's handwriting. A fingerprint expert matched three latent fingerprints on one of the letters with Defendant's fingerprints.

The jury deliberated less than two hours before convicting Defendant on all three counts.

### III. DISCUSSION

**A.     Standard of Review**

28 U.S.C. § 2255 provides persons in federal custody with a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of the sentence prescribed by the court.  See United States v. Addonizio, 442 U.S. 178, 185 (1979).  A prisoner is entitled to an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255.  A hearing is unnecessary if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995).  Here, the record conclusively shows that Defendant is not entitled to relief on his claims.

**B.     Ineffective Assistance of Standby Counsel**

After Defendant refused to cooperate with his first two court-appointed attorneys, Magistrate Judge Raymond L. Erickson appointed a third attorney to represent Defendant but stated that the appointment would be Defendant's "**final** opportunity to cooperate with a Court-appointed attorney."  Feb. 28, 2005, Order [Docket No. 65] at 10 (emphasis in original).  Defendant refused to cooperate with his third court-appointed attorney and requested to represent

himself *pro se*. Def.'s Mot. to Proceed *Pro Se* [Docket No. 81]. After a Faretta[3] hearing, Magistrate Judge Erickson granted Defendant's request to proceed *pro se* and appointed Defendant's third court-appointed counsel "as standby counsel . . . to provide the Defendant such assistance and advice as he requests in this matter." Apr. 8, 2005, Order [Docket No. 85]. On direct appeal, the Eighth Circuit concluded that Defendant's decision to proceed *pro se* was knowing, intelligent, and voluntary. Mentzos, 462 F.3d at 837-39. In his § 2255 Motion, Defendant claims he received ineffective assistance of standby counsel.

The Government presented eleven witnesses at trial. Defendant represented himself *pro se* during the testimony of the first nine witnesses, including the juvenile victim. Before the Government presented its last two witnesses, Defendant stated he did not plan to call any witnesses, and he requested that the Court allow his standby counsel to represent him. July 21, 2005 Tr. [Docket No. 226] at 9-14. The Court granted Defendant's request. Id. at 13-14.

The Government then called Gwendolyn Hunstad ("Hunstad"), an employee of a property management company, who testified that company records reflected that a woman named Glenda Sanders ("Sanders") lived in an apartment at the identified Coon Rapids address from February 11, 2000, to July 11, 2001. Id. at 25, 30. Defendant's standby counsel did not cross-examine Hunstad. The Government's last witness was United States Secret Service Agent Katherine Wespetal ("Agent Wespetal"). Agent Wespetal testified that she learned during her investigation that Sanders is Defendant's mother. Id. at 33. Defendant's standby counsel asked

---

[3] Faretta v. California, 422 U.S. 806 (1975).

5

Agent Wespetal two questions on cross-examination. Id. at 34-35. After the Government rested, Defendant's standby counsel confirmed that he would not call any witnesses. Id. at 44.

Defendant now claims that his standby counsel did not adequately prepare for trial, failed to secure expert testimony, and did not effectively cross examine the Government's last two witnesses. Although whether criminal defendants are entitled to effective assistance of standby counsel is in doubt, the Court will assume Defendant had such a right. See United States v. Morrison, 153 F.3d 34, 55 (2d Cir. 1998) (stating that "there is no constitutional right to hybrid representation . . . where [the defendant] shared the duties of conducting her defense with a lawyer"); United States v. Windsor, 981 F.2d 943, 947 (7th Cir. 1992) ("This court knows of no constitutional right to effective assistance of standby counsel.").

To prevail on a claim of ineffective assistance of counsel, a prisoner must show (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. Courts employ a strong presumption that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id.

After reviewing the record, the Court finds the record conclusively shows that Defendant cannot satisfy either prong of the Strickland test. Defendant has no basis to argue that his standby counsel's conduct fell below an objective standard of reasonableness. Defendant alleges

his standby counsel "never interviewed expert witnesses, prosecution witnesses, alibi witnesses, impartial witnesses, [and] potentially corroborating witnesses." Def.'s Mem. in Supp. of § 2255 Mot. at 5.  However, Defendant does not allege that he requested that his standby counsel perform these tasks.  Defendant's vague allegations that his standby counsel should have interviewed unidentified witnesses who would have given unspecified exculpatory testimony cannot support a claim that Defendant's standby counsel was ineffective.

The Court also rejects Defendant's claim that his standby counsel failed to adequately cross-examine Hunstad and Agent Wespetal.  The scope of Hunstad's and Agent Wespetal's direct testimony was extremely narrow and their credibility was not at issue.  Defendant has not identified additional subject matter that his counsel should have explored during cross-examination of Hunstad or Agent Wespetal, nor has Defendant identified how their testimony could have been impeached.  After reviewing the transcript, the Court finds that standby counsel's decisions regarding the cross-examinations of Hunstad and Agent Wespetal did not fall below an objective standard of reasonableness.

Defendant also claims his standby counsel "failed to allow Defendant to testify." Def.'s Mem. in Supp. of § 2255 Mot. at 5.  Defendant alleges no facts to support this allegation, and Defendant never interjected when his standby counsel stated that the defense would not call any witnesses. July 21, 2005, Tr. at 39-41.  Given that Defendant never hesitated to criticize his standby counsel and express his views to the Court during trial, Defendant has no basis to argue that his standby counsel somehow prevented him from testifying.  Defendant also vaguely asserts that his standby counsel should have requested a mistrial. Def.'s Mem. in Supp. of § 2255 Mot. at 5.  However, after the Court reappointed standby counsel to represent Defendant,

standby counsel moved for a mistrial, presumably so that new counsel could be appointed. July 21, 2005, Tr. at 14. The Court denied the motion. Thus, contrary to Defendant's assertion, standby counsel did request a mistrial.

Even if Defendant could somehow show that his standby counsel committed unprofessional errors, Defendant's claims of ineffective assistance of counsel still fail because he cannot show prejudice. As the Eighth Circuit concluded, "[t]here is overwhelming evidence in the record that Mentzos communicated with M.S. over the phone and through the mail, and persuaded her to mail him the pictures." Mentzos, 462 F.3d at 840. In light of the overwhelming evidence of Defendant's guilt, the alleged errors do not suggest "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687-88, 694.

**C.    Claims Addressed on Direct Appeal**

"[I]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255." United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001). Defendant argues this Court improperly denied his request for expert witnesses at trial, and he challenges this Court's application of the advisory United States Sentencing Guidelines. In particular, Defendant challenges: (1) the application of a two-level enhancement for use of a minor in commission of the offense; (2) the application of a two-level enhancement for an aggravating role, and (3) an upward departure from criminal history category V to category VI. The Eighth Circuit rejected all of these arguments on direct appeal. Mentzos, 462 F.3d at 840-43. Therefore, Defendant cannot relitigate them through his § 2255 Motion.

**D.      Access to Trial Transcripts and Evidence**

Defendant requests access to transcripts and evidence necessary to "perfect" his § 2255 Motion. The Eighth Circuit has held that "a prisoner has no absolute right to a transcript to assist him in preparation of a collateral attack on his conviction, and that constitutional requirements are met by providing such materials only after judicial certification that they are required to decide the issues presented by a non-frivolous pending case." United States v. Losing, 601 F.2d 352, 352 (8th Cir. 1979) (per curiam). The claims Defendant asserted on direct appeal cannot be relitigated in a § 2255 motion. Therefore, a transcript is unnecessary to decide those claims. Defendant's sole remaining claim, his ineffective-assistance-of-standby-counsel claim, is frivolous because Defendant represented himself for almost the entirety of the trial as the Government presented overwhelming evidence of his guilt. Defendant has no one to blame but himself for any deficiencies in his representation at trial.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Dennis Eugene Mentzos, Jr.'s 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence [Docket No. 250] is **DENIED**.

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 25, 2008.